FIRST MORTGAGE CORPORATION OF IOWA, Appellant, v. LE MARS GRAVEL COMPANY et al., Appellees.

**ESTOPPEL:** Evidence—Sufficiency. Evidence reviewed, and held insufficient to show that a mortgagee was estopped from insisting on the priority of his mortgage.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON, Judge.

FEBRUARY 12, 1924.

APPELLEE Dalton, in an action in equity between plaintiff and defendant, intervened, seeking to establish a claim for money advanced defendant subsequent to the date of the mortgage, as a lien prior to the lien of the plaintiff mortgagee. By its decree the trial court found that, as to the two notes of $2,000 each, the plaintiff had waived the priority of its mortgage, and gave intervener a first lien, prior and superior to that of plaintiff on the real estate covered by the mortgage and plaintiff's judgment thereon, or on the proceeds thereof if the real estate should be sold in the foreclosure proceedings brought by the plaintiff. The court also gave intervener judgment against the Gravel Company for the amount of the notes, with interest. It appears that judgment and decree had been taken in favor of plaintiff and against the Gravel Company, under plaintiff's mortgage, and that the proceedings herein were on the intervention. The plaintiff appeals.—*Reversed.*

*Kindig, McGill, Stewart & Hatfield, George Cosson, Harold H. Newcomb,* and *Hatley & Van de Steeg,* for appellant.

*Klay & Klay,* for appellee.

PRESTON, J.—A statement of the facts, stated as briefly as may be, is necessary to an understanding of the question before us.

Appellee now claims an estoppel against plaintiff, rather than a waiver, as found by the trial court. There may be some question as to whether he has sufficiently pleaded an estoppel. The question for determination depends largely upon correspondence, and we think it is more a question of the interpretation of the correspondence and the intention of the parties. There is but little dispute in the evidence. The letters speak for themselves. The mortgage, notes, letters, and other documents were introduced in evidence, and the intervener and the receiver gave some oral testimony, as did J. H. Allen, president of plaintiff company.

It is contended by appellee, and we take it the trial court so found, that a letter of October 8, 1921, to be referred to in a moment, is controlling; while appellant contends that such letter should not be considered alone, but that other letters between the parties on the same subject and at about the same time should be considered, and that the agreement and intention of the parties should be determined from the several letters comprising the correspondence.

Going back a little, it appears that, on October 2, 1918, defendant gravel company pledged all its assets, real estate, leasehold interests, and personal property by mortgage to plaintiff's predecessor. The mortgage secured $250,000, which represented a bond issue by the gravel company. This mortgage securing the bonds was a first mortgage on all of the property. In 1921, the gravel company was having some difficulty to meet its operating expenses. F. A. Kenyon, president of the gravel company, carried his account in the First National Bank of Le Mars. The bank was operated by R. B. and E. A. Dalton, both officers of the bank and owners of practically all its stock. The father of the two Daltons had, in 1918, made a lease to the gravel com-

pany, granting the right to remove sand and gravel from certain real estate. This lease was assigned, and ultimately became the property of intervener. The two $2,000 notes were indorsed by the bank to E. A. Dalton, intervener, by E. A. Dalton, president of the bank. At the time the letter of October 8, 1921, was written, and received by the bank, the gravel company was indebted to the bank on old items of indebtedness, and for rent due under the lease, the annual installment of $2,000 having been unpaid since January 1, 1921.

In September, 1921, the plaintiff felt some anxiety concerning the likelihood of the gravel company's starting operations in the spring of 1922. On September 27, 1921, J. H. Allen, president of plaintiff company, wrote the president of the bank, in substance, that plaintiff, as the bank knew, had a mortgage upon the ground owned and operated by the gravel company, of which company Mr. F. A. Kenyon was president, and to the further effect:

"Our company desires to be helpful to the gravel company, under Mr. Kenyon. * * * Can Mr. Kenyon arrange for sufficient credit, say $4,000 to $5,000, in the spring, to open up the business and commence operation?"

The letter also inquired as to Mr. Kenyon's ability to handle the proposition, and what the bank thought of the outlook for future business of the gravel company. In answer to this letter, E. A. Dalton, cashier of the bank, wrote, September 29th, stating that, as Allen probably knew, the bank had leased its gravel pit to the defendant company, and that they had some stock; that for three years the bank had always found Mr. Kenyon reliable and prompt in all his dealings with the bank; and that they had at various times advanced him money, and:

"At present, the company still owes us $3,000, which Mr. Kenyon has promised to pay this fall, provided business doesn't stop too soon. Should this obligation be taken care of, and we have your assurance that the bonding company would not foreclose your mortgage and refuse to pay, we will be very glad to advance $4,000 or $5,000 in the spring to start business, if the plant is continued under the management of Mr. Kenyon."

The letter also gives an opinion as to the financial standing of Mr. Kenyon, and says that they saw no reason why the gravel

business should not be better next year, and that, if so, Mr. Kenyon would be in a position to turn over to plaintiff considerable money on his indebtedness. On October 8, 1921, Mr. Allen wrote the bank as follows:

"At the suggestion of Mr. F. A. Kenyon, president of the LeMars Gravel Company, I write to advise you that if you are in position to accommodate the LeMars Gravel Company with a short time loan of from $5,000 to $7,000 our corporation will not in any way cut you out by foreclosure of the mortgage. In other words, it is our purpose to assist the gravel company in the conduct of its business. In so doing we desire to render them such assistance as we legitimately can in financing themselves. We will permit them to pay you from the proceeds of gravel sold, for advances made by you to them up to the amount of $7,000.00."

On October 10, 1921, E. A. Dalton, cashier, wrote Mr. Allen:

"We are in receipt of your letter of the 8th with reference to the matter of temporary accommodations for the LeMars Gravel Co., and will govern ourselves accordingly."

No further correspondence was had, prior to the $4,000 loan.

On December 31, 1921, the bank loaned the gravel company $2,000, taking its note, signed by F. A. Kenyon, president. On January 14, 1922, a second $2,000 loan was made by the bank to the gravel company, and a note, signed as before, was taken. This $4,000 was used to pay past-due rent for the year 1921, and to pay part of the old accounts against the gravel company, so that its creditors would not take action at that time. The gravel company later became seriously involved, and plaintiff commenced foreclosure proceedings, and a receiver was appointed July 8, 1922. In June and July, 1922, there was some further correspondence between Mr. Allen and intervener, the first letter being from intervener, stating that he understood that the plaintiff was inclined to foreclose their mortgage, and that, in view of the advances made, he would like to know what action would be taken with reference to his claim,—referring to the letter of October 8, 1921. In answer to this, Mr. Allen wrote that this was the first suggestion that plaintiff had received, with reference to the making of any advances, and inquiring what

amount, if any, intervener claimed to have advanced upon the strength of the letter, and for what purposes the funds were used.    In answer to this, Mr. Dalton wrote that they had advanced $4,000 on the basis of the letter of October 8th, and that it was applied to pay current accounts and $2,000 rent.    Mr. Allen also wrote that he did not consider that the matter claimed as advances came within the spirit and intent of the letter of October 8th, and that he did not feel that they would be covered by said letter.    Some of these last letters were received in evidence, over objection, but subject to objection.    The letters written prior to the loans are the more important.

Appellant contends in argument that, from the correspondence prior to the loan, both Mr. Allen and Mr. Dalton state that the credit sought was for the purpose of commencing operations in the spring of 1922, and that it would be granted in the spring to start business, if the gravel plant was continued under the management of Mr. Kenyon; that these facts were in the minds of both parties, and were the very basis of the negotiations.    It is quite clear to us that this is so.    We are of opinion, too, that the letters should be considered together, and that the learned trial court erred in considering only the letter of October 8th.

Interpreting the correspondence and contract as appellant contends would mean that plaintiff was willing to waive its lien to the extent of the loan, for the purpose of permitting the gravel company to raise money to commence operations in the spring. This would be to the advantage of the plaintiff.    On the other hand, it would be no advantage to plaintiff, but, on the contrary, would be to its disadvantage, to allow junior past-due claims to come in ahead of its first lien.    This would not be a reasonable construction of the letters.    It is apparent that it was the intention and contemplation of the parties that advances should be made to enable the gravel company to commence operations in the spring, and that, by the letter of October 8th, plaintiff would permit the gravel company to pay the bank "from the proceeds of gravel sold, for advances made."    Intervener as a witness testifies:

"Q.    What money did you loan at any time for the gravel company to start business in the spring of 1922 under the man-

agement of Mr. Kenyon? A. I don't think I loaned anything. I remember my letter of September 29th, in which I made the statement: 'We will be very glad to advance $4,000 or $5,000 in the spring to start business, if the plants are continued under the management of Mr. Kenyon.' Q. And you understand that Mr. Allen had that statement in mind when he wrote his letter of October 8th, don't you? A. His letter was a reply to mine,—yes, sir. And after these letters, I made the loan of December 31st. Part of the money from the first loan was turned over to E. A. and R. B. Dalton, for the payment of rent for the year 1921. The other loan was borrowed for the purpose of paying up past bills."

Apparently realizing the force of the language in the letters as to the purpose in making the advances, intervener claimed, and so testified, that the rent was past due, and had to be paid before the gravel company could commence business in the spring, and that it was also necessary that the old bills should be paid. But he also testifies, as before set out, that he did not loan anything for the gravel company to start business in the spring. Furthermore, it is not shown that plaintiff or its president had any knowledge of the past-due rent and bills at the time of the letters written before the loans were made. This being so, it would seem to indicate quite clearly that it was not plaintiff's intention, or within the contemplation of the parties, that plaintiff would waive its first lien for such a purpose. Intervener being so heavily interested in the bank, the practical effect of the loan by the bank and the payment of the money to intervener was that the payment was made to intervener himself, one of the creditors of the gravel company, and not to advance money to the company for expenses to enable it to commence operations in the spring. In one of the letters, intervener stated to Allen that he knew of $10,000 of good paper that Kenyon owned. Out of this, doubtless the past-due rent and past bills could have been paid. At any rate, nothing was said in any of the correspondence that the old bills would have to be paid. Dalton had not asked that. Allen was willing to help the company in which plaintiff was so vitally interested. The closing paragraph of the letter of October 8th states that plaintiff would permit the gravel company to pay intervener from the

proceeds of the gravel sold for advances. In answer to that, two days later, intervener referred to Allen's letter as to the matter of temporary accommodations for the gravel company, and said that they would govern themselves accordingly. There is nothing in any of the correspondence to indicate that plaintiff or its president would waive the lien of its first mortgage, in order to allow Kenyon to pay the past-due obligations which then existed. There was no agreement to that effect. The money having been used for a different purpose from that agreed upon, we think that no waiver or estoppel has been shown.

Numerous cases are cited by appellant to the effect that the letters must be considered and construed together, to determine the intention of the parties and what the contract was; that one cannot be held to waive a lien unless the intent be expressed, or is clear and plain; that the presumption is against such a waiver. Also, that a waiver is a voluntary relinquishment of a known right, and that it must be voluntary, with knowledge of the facts and of the parties' rights, or implied from conduct which amounts to an estoppel; that, to make out a waiver of a legal right, there must be a clear and decisive act by the party showing such a purpose, or acts amounting to an estoppel on his part; and further, that the intention of the parties is controlling, and that the best evidence of the intention is to be found in the language used. We deem it unnecessary to cite the cases or review them.

The judgment of the district court is—*Reversed*.

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.